JENKINS v. PHŒNIX CONST. CO.

(Supreme Court, Appellate Division, First Department.   June 2, 1911.)

MASTER AND SERVANT (§ 226*)—ASSUMPTION OF RISKS—RISKS FROM NEGLI-
GENCE—KNOWLEDGE.
    A charge limiting risks assumed by the servant to those inhering in
the service after the master has discharged his duty is erroneous, where
it might be found that the servant, knowing as much about the danger
as the master, voluntarily got under a heavy suspended weight with noth-
ing but a defective rope to hold it.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 659–
667; Dec. Dig. § 226.*]

Appeal from Trial Term, New York County.

Action by Robert Jenkins against the Phœnix Construction Com-
pany.  From a judgment on a verdict for plaintiff, defendant appeals.
Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, MIL-
LER, and DOWLING, JJ.

E. Clyde Sherwood, for appellant.
Mitchell Wetherhorn, for respondent.

MILLER, J.  The plaintiff, an employé of the defendant, was driv-
ing piles with a pile driver, a hammer weighing about 3,500 pounds,
moving through a framework 40 feet in height, and raised by a rope
attached to a drum operated by a steam engine.  He signaled the engi-
neer to stop the machine, and while the hammer was suspended about
15 feet above the pile, which he was driving, he undertook to put a rim
upon it to keep it from splitting, when the rope broke and the hammer
descended upon his hand, crushing it.  The plaintiff's evidence tended
to show that the rope was of poor quality, the fibers being too short;
that the same kind of rope had been furnished by the defendant for
a period of 3 or 4 months; that a new rope would only last 3 or 4
days, whereas if of good quality it ought to last 15 days; that the
attention of the defendant's superintendent was called to the quality
of the rope; that when a rope broke it was spliced, if possible, other-
wise a new rope was obtained from the storehouse or from some other
machine not in use.  It is not claimed that it was possible to discover
the quality of the rope from its outward appearance, and the evidence
of the defendant tends to show that it was purchased as of the best
quality from reputable dealers.  The particular rope that broke had
only been in use about a day.  Upon the evidence the defendant was
liable only in case it was chargeable with knowledge that the rope
being furnished was insufficient for the use to which it was put.  The
plaintiff himself testified to the fact that the ropes frequently broke,
and that he spliced them as long as it was possible to do so before
getting new ones.  It appears that there was a device, called a "tog-
gle," attached to the top and bottom of the framework, upon which
the hammer could rest when not in use.  At the close of the evidence
the court excluded the notice, claimed to have been served pursuant to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

the employer's liability law (Consol. Laws 1909, c. 31), and submitted the case to the jury as an action at common law. In the course of the charge the court said:

"So far as any risk is concerned which the plaintiff assumed in the premises, I charge you that such risk did not begin until the defendant had discharged its duty of exercising reasonable care and prudence in furnishing to the plaintiff necessary safe and suitable rope."

To that charge an exception was taken. While expressions may be found in the books to the effect that the servant assumes only such risks as arise after the master has discharged his duty (Benzing v. Steinway & Sons, 101 N. Y. 547, 5 N. E. 449; McGovern v. C. V. R. R. Co., 123 N. Y. 280, 25 N. E. 373), that is but another way of saying that the master is not liable if he discharges his duty. It is necessary to observe the distinction between the inherent risks of the business—i. e., those arising after the master has discharged his duty, and the obvious risks, i. e., those resulting from the master's negligence—which the servant assumes by voluntarily continuing in a position of danger with full knowledge of it. A charge which limits the risks assumed by the servant to those which inhere in the service after the master has discharged his duty is manifestly erroneous, because it is well settled that the servant may assume risks arising from the master's negligence, even from the failure to discharge a statutory duty (Crown v. Orr, 140 N. Y. 450, 35 N. E. 648; Knisley v. Pratt, 148 N. Y. 372, 42 N. E. 986, 32 L. R. A. 367; Rooney v. Brogan Construction Co., 194 N. Y. 32, 86 N. E. 814; Milligan v. Clayville Knitting Co., 137 App. Div. 383, 121 N. Y. Supp. 763). In this case the jury might have found that the plaintiff knew as much about the danger as the master did, and that he voluntarily put his hand on the pile knowing that the hammer was suspended above with nothing but a defective rope to hold it. The charge, excepted to, took that question from the jury and the error was therefore prejudicial.

The judgment should be reversed, with costs to the appellant to abide the event. All concur.

INGRAHAM, P. J. I concur with Mr. Justice MILLER. I am also of the opinion that the verdict that the defendant was negligent was not sustained by the evidence. It is not claimed that the employer's liability act applied, and the liability of the defendant must be measured by his obligation to the plaintiff under the rules of the common law.

One of the duties imposed upon the defendant was that of supplying its employés with safe and proper machines and materials to perform their work. A violation of this duty or negligence in its performance imposed a liability upon the employer for any injuries sustained in consequence of the machinery or materials furnished failing to do the work or bear the strain required of them. It is, however, a question of negligence, not an absolute liability, and if an employer does all that a reasonably prudent man would do to supply his employés with safe machinery and materials to do the work there is no negligence upon which a recovery for injuries sustained can be predicated.

The rope in question had been in use four hours on the day before the accident on another pile driver. When the plaintiff required a rope on the pile driver that he was operating he went to the store-house to get such a rope. For some reason he could not find a new rope at the storehouse, but there was another pile driver idle so he took a rope from that pile driver and put it on the one he was oper-ating. When he took the rope off this pile driver he looked at it to see if it was all right, but there were no flaws apparent, and the rope did not show any signs that it was rotten or not a safe rope to use. The plaintiff then put this rope on the pile driver that he was oper-ating and used it that night, and the next day until a quarter to four in the afternoon when the rope broke and the plaintiff was injured. There was some evidence to show that these ropes were expected to last for 15 days, although some of the ropes that were used had brok-en after 4 or more days' use. This rope had been in use not more than a day. It was as plaintiff testified apparently in good order and a safe and proper rope for the purpose for which it was used. Plain-tiff himself selected this rope as a safe rope to use after examin-ing it to see if there was any indication that it was not in good con-dition. It had been purchased from a reputable manufacturer, was the same kind of rope that had been used on the work, and had been purchased as the best quality of rope made from the best materials. The evidence is that this plaintiff knew as much about this rope as the defendant and certainly if it appeared to him in good condition and safe for use no inspection that the defendant could have made would have disclosed the defect which caused the accident. There is nothing in the evidence that I can see that even tended to show that the defendant was negligent, and therefore I do not think that the plaintiff can recover.

I therefore concur in the reversal of this judgment.